BAUSS v. BAUSS et al. (No. 7688.)

(Court of Civil Appeals of Texas. Galveston. May 15, 1919. Rehearing Denied June 12, 1919.)

1. FRAUDS, STATUTE OF ⊙=158(2) — PAROL TRANSFER OF PROPERTY—EVIDENCE.

In action to recover interest in land, in which plaintiff relied on agreement between stepmother and his father that property, title of which was in mother, would become common property of both, evidence held insufficient to sustain such parol transfer of property.

2. TRUSTS ⊙=373 — AGREEMENT TO HOLD LAND FOR ANOTHER—QUESTION FOR JURY.

In action to recover interest in land in which plaintiff relied on agreement of half-brother made on transfer of title to him by his mother that plaintiff would receive his share, evidence held sufficient to raise an issue for the jury.

Appeal from District Court, Galveston County; Clay S. Briggs, Judge.

Suit by Douglass L. Bauss against Theodore L. Bauss and others. From a judgment entered on verdict directed for defendants, plaintiff appeals. Reversed and remanded.

T. C. Turnley and V. M. Clark, both of Houston, for appellant.

James B. & Charles J. Stubbs, of Galveston, for appellees.

PLEASANTS, C. J. This suit was brought by appellant against appellee and others to recover an undivided interest in a lot or parcel of land situate in the city of Galveston and described as the east 31 feet of lot 3 in block 317 in said city.

The petition alleges, in substance, that the property in controversy was the community property of Mary Bauss and Louis Zimmerman, the deceased mother and father of the plaintiff; that the said Louis Zimmerman, plaintiff's father, was the second husband of plaintiff's mother, Mary Bauss, and plaintiff's real name is Douglass Zimmerman, but that he has always been called

and known by the name of Douglass Bauss and has adopted and accepted such name; that he is the sole heir of his deceased father, and as such is entitled to his father's interest in said property.

The title and interest of plaintiff's father in the property are set out in the petition as follows:

"That at the time of the marriage of plaintiff's said father with plaintiff's mother, the said Mary Bauss, deceased [she] owned the lots of land above described with some improvements thereon, and that since and during said marriage many and divers improvements were made thereupon with community funds of plaintiff's said mother and father, and that the sum expended by the plaintiff's said father towards the improvements, buildings, and structures on said property was of a total sum of about $3,500, and that it was then and there mutually agreed, contracted, and understood by and between the plaintiff's said father and mother, at and before the expenditure of said sum for said improvements, for and in consideration of said contribution by plaintiff's father, that the said lot, land, and premises, together with the improvements thereon, should be and were the common property of the plaintiff's said father and mother; that at the time of the said agreement and contract above described and at the time of the contribution for said improvements aforesaid the reasonable cash market value of said lot was about $1,200; that at said time the reasonable cash market value of the improvements on said property prior to the making of the improvements by plaintiff's said father was about $1,000."

It is then alleged:

That the defendant Theodore Bauss, who is the half-brother of plaintiff, being the son of plaintiff's mother by her first husband, had, by fraud and false representations that plaintiff was a spendthrift and would dissipate his portion of the property if it was left to him, induced their said mother shortly before her death to convey all of the property in controversy to him; that said deed was so made by plaintiff's mother to defendant Theodore Bauss because of his repeated representations in regard to plaintiff and his insistent entreaty, and upon the express agreement and promise of said defendant that he would hold the property in trust for plaintiff and himself "and would see that plaintiff should get his share thereof, and but for her belief in said representation last named she would not have executed said deed even under the persuasion and entreaty above set forth, but plaintiff avers that said conveyance, while appearing to be directly to and for the benefit of defendant Theodore Bauss, that it was expressly agreed, understood, and contracted by and between plaintiff's said mother and defendant Theodore Bauss that he would thereafter hold one-half of the estate of said mother for plaintiff, and would see that plaintiff should obtain the same, and that said mother, in executing the said deed to the entire estate, as was done in said conveyance, was moved so to do, as to the one-half thereof intended for the use and benefit of plaintiff, by the representation of defendant Bauss that he would hold said one-half for the benefit of plaintiff, and in trust for him, and said deed was made in consideration of the contract and agreement between plaintiff's said mother and said defendant, as above set forth with respect thereto.

"Plaintiff further shows that immediately after the death of said mother defendant Theodore Bauss openly repudiated his said contract and agreement with his said mother as to the share of plaintiff, and has ever since claimed all said property, even the whole of said lot and improvements, in opposition to and to the exclusion of any claim of plaintiff thereto, and yet claims the whole of said property in repudiation of said agreement by which he obtained said deed."

The defendant Theodore Bauss answered by plea in abatement general and special exceptions to the petition, and general denial of the allegations of the petition. He further by alternative plea set up various sums of indebtedness due him by the deceased Mary Bauss in satisfaction of which he averred the land was conveyed to him, and sought, in event he was not allowed to recover the land, a foreclosure of a lien thereon for the amount of the indebtedness claimed by him against the said Mary Bauss.

The other defendants, who were heirs, or the children of heirs, of Mary Bauss, were eliminated from the case during the progress of the trial, and were properly disposed of by the judgment.

The cause as between appellee and appellant Theodore Bauss was tried with a jury.

After hearing the evidence, the court instructed the jury to return a verdict in favor of the defendant, and upon the return of such verdict rendered judgment in accordance therewith.

Under sufficient assignments of error appellant assails the judgment on the ground that the evidence was sufficient to raise the issue of his right and title to the interest in the property as claimed in his petition, and therefore the trial court erred in instructing the jury to find for the defendant.

[1, 2] We agree with the trial court that neither the pleading nor the evidence are sufficient to raise the issue of title in appellant to any interest in the property as the heir of his deceased father, Louis Zimmerman. The title to real estate cannot under our law be transferred by any such parol agreement as that alleged in the petition to have been made between plaintiff's father and mother, and the evidence offered in support of these allegations is less definite and more wanting in showing the facts necessary to make a valid parol transfer of the title to land than the allegations of the petition. The most that could be made from the pleadings and evidence upon this issue would be a right in plaintiff for reimbursement out of the property for the amount of his father's interest in the community funds

which was invested in improvements on the property; but this relief is not sought by the petition, and, if it had been, the evidence is too indefinite and uncertain as to the agreement and as to what, if any, funds of plaintiff's father were expended in making said improvements to sustain any judgment for plaintiff. Parrish v. Williams, 53 S. W. 79. But, conceding that plaintiff's father had no title to nor interest in the property, if his mother, intending that he should have a one-half interest therein, conveyed the whole property to appellee upon his express agreement and promise that he would hold one-half thereof in trust for plaintiff, such trust can and should be enforced. Upon this issue Anna Briggs, a witness for plaintiff, testified:

"I have lived in Galveston all my life. Am employed at Garbade Eiband, and have been working there four years. I knew Mrs. Mary Bauss in her lifetime; knew her about six years. She is the mother of Douglass and Theodore Bauss. I lived with her for six years, and she considered me a part of the family, as I did a great deal around the house for her as her daughter. I was there prior to 1913 quite a little bit. I left there about a year ago. I am not very well acquainted with Theodore Bauss; only knew him by his coming to the house, his mother's house. I saw him there on several occasions in 1913. In 1913 I saw Theodore Bauss come to see his mother. They talked on various things, and I was there several times, and soon saw that I was not wanted and walked away, but it seemed that they were talking about various things about Douglass. I could not tell what they said, only what Mrs. Bauss told me after the conversation was over when she came over to my house crying. Right after the time he talked to her was when he left. I don't know how many times, but I know that he came over there quite often and talked at various times. On these occasions when I saw Mrs. Mary Bauss immediately after he left she came over crying, and she was very much depressed about Theodore Bauss. After they had got through talking, she came over to my house very much depressed and crying, and she said that Mr. Theodore Bauss had been trying to poison her mind against Douglass. The way she appeared toward Douglass was she loved him better than anything else in the world. These conversations that I have just testified about between Mrs. Bauss and Theodore were in 1913 and 1914. The conversations occurred very often, and I did not take any particular notice how often. As far as I can remember there was a year of the time when Theodore did not visit his mother. They had some misunderstanding. In the year 1913, when I saw Theodore Bauss talk to his mother after which she came to me crying, and on the occasion when she told me Theodore was trying to poison

her mind against Douglass, Mrs. Bauss told me that she had it fixed; that Mr. Theodore Bauss had promised her faithfully that, if anything should happen to her, he would dispose of her property equally amongst him and his brother. When Douglass was at home, as far as I know, and as well as I know, he was very nice to his mother, and he did everything that she asked him to do, and he repaired the property and done the painting and fixed everything that had to be fixed, and transacted all her business when he was there. Mrs. Bauss understood and spoke very little English. She used to get me to read her letters when they came in English. When Theodore visited his mother his conferences were secret. If there was any one upstairs, they would go downstairs, and, if any one downstairs, they would go upstairs. It was Mr. Theodore Bauss that would suggest that they go upstairs or downstairs, as the case may be."

Miss Alvina Ueckert testified:

"I live at 1709 Avenue G. I worked 12 years for Mr. Taylor in the O. K. Laundry business. My position is checking out. I am not married. Have been rooming with Mrs. Mary Bauss 7 years. Was intimate with her."

About a conversation occurring between Mrs. Bauss and appellee Theodore Bauss, said witness testified as follows:

"They were talking in 1914, in the sitting room. I was in the kitchen eating my breakfast, and Mr. Bauss did not know I was there. He came up the side steps. She let him in her room, and they both was sitting in her room, and he said, 'Good morning, how do you feel?' and she said: 'I don't feel so well,' and he asked about the deed, and she said, 'There you go again about the deed.' Then she asked him if she could trust him, and he said, 'You can trust me faithfully.' She said that 'you let Douglass have his half?' Then she go to the bank and have it deeded. That was in 1914, first part in the summer. Then when I walked in he walked out. This was either the last part of April or first part of May. I could not fix the month exactly. I could fix the year exactly, because it was the year before the storm."

The deed in question was executed June 26, 1914, and recited as the consideration $10 and other considerations.

We think this evidence was sufficient to sustain a finding that the land was, as alleged in the petition, conveyed to the appellee in trust for himself and plaintiff, and the trial court erred in not submitting that issue to the jury.

For the error indicated, the judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.